572 So.2d 178 (1990)
BERNARD LUMBER COMPANY, INC.
v.
LAKE FOREST CONSTRUCTION CO., INC., Ronald Natal, and My Favorite Year, Inc., Individually & in Solido.
No. CA 89 1465.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
Rehearing Denied January 18, 1991.
*179 Diana Rachal, New Orleans, for plaintiff-appellee.
Robert Shearman, R. Ray Orrill, Jr., New Orleans, for defendant-appellants Lake Forest Const. Co. Inc. and My Favorite Year, Inc.
Richard Najolia, New Orleans, for defendants-appellees Ronald T. Natal and Eugene J. Gomes, Jr.
Before LOTTINGER, SHORTESS and CARTER, JJ.
LOTTINGER, Judge.
This is an action by Bernard Lumber Company, Inc. to recover the amount of $22,241.00 allegedly owed to it for services rendered and building materials and supplies delivered to Lake Forest Construction Company, Inc. and to recognize a materialman's lien on immovable property pursuant to the Private Works Act (La.R.S. 9:4801 et seq.). From a judgment in favor of the plaintiff awarding costs of services, materials and supplies plus interest and attorney's fees; two defendants, Lake Forest Construction Company, Inc. and My Favorite Year, Inc., have appealed.

FACTS
The parties to the construction arrangement that is at issue in this suit were (1) Festival Plaza Partner, Inc. (Festival Plaza); (2) My Favorite Year, Inc. (My Favorite Year); (3) Lake Forest Construction, Inc. (Lake Forest); (4) Ronald Natal; and (5) Bernard Lumber Company, Inc. (Bernard). *180 Festival Plaza was the lessor of the property upon which the construction was taking place. My Favorite Year was the lessee who contracted with Lake Forest for the construction of certain improvements. In other words, Lake Forest was the general contractor. Ronald Natal was the president of Lake Forest who signed a personal guarantee agreement and a credit application on behalf of Lake Forest as per request of Bernard, the subcontractor. These agreements were signed in conjunction with the subcontract that had been entered into by Lake Forest and Bernard for the construction of My Favorite Year's improvements.
My Favorite Year entered into a construction contract with Lake Forest for the performance of interior improvements of the leasehold premises to be occupied by My Favorite Year for operation of a Copeland's Restaurant in Slidell. This contract was recorded on August 5, 1985; however, a bond was not obtained. Bernard subcontracted with Lake Forest to provide the materials and the services needed to perform these improvements. In conjunction with this subcontract, Lake Forest entered into a credit agreement with Bernard Lumber that provided for interest and up to 25% attorney's fees in the event of default. My Favorite Year never entered into a contract with Bernard.
In December, 1985, the improvements were near completion thus allowing Copeland's to commence business. All materials and services provided by Bernard occurred prior to January 1, 1986. Following approval of the improvements, My Favorite Year tendered payment to Lake Forest for the balance owed on the contract. During the course of construction, a dispute arose between Bernard and Lake Forest as a result of alleged faulty workmanship with respect to certain millwork. Lake Forest contends that the millwork did not meet the requested specifications and was inferior in quality. Bernard contends that the millwork was damaged as a result of the humidity because it was not placed in an enclosed area upon delivery.
Upon completion of the improvements, Bernard requested payment for materials and services rendered. Lake Forest responded to this request with a list of disputed "charge backs" totaling approximately $16,485.40. Lake Forest claims that it is owed "charge backs" for services and materials that had to be obtained as a result of Bernard's failure to fulfill its contractual obligations. Bernard denied the existence of "charge backs" and sought to recover the entire balance owed by Lake Forest.
Bernard filed a statement of claim on August 1, 1986, thereby creating a lien on the immovable property owned by My Favorite Year under a lease to it by Festival Plaza Partners, Inc. This claim was filed 206 days following the date of the last invoice, January 8, 1986, for services previously performed. Neither My Favorite Year nor Lake Forest filed a notice of termination following completion of improvements.

FINDINGS OF THE TRIAL COURT
The trial court found that the lien was timely filed pursuant to La.R.S. 9:4822(A) of the Private Works Act; therefore, Bernard's lien and privilege were recognized. Since notice of termination had not been filed by My Favorite Year, the tolling period for filing claims was never activated. The trial court denied Lake Forest's claim for "charge backs" on the basis that Lake Forest failed to prove the existence of any "charge backs." Judgment was entered against Lake Forest and My Favorite Year for the remaining unpaid balance plus interest and attorney's fees as provided for in the credit application.

ASSIGNMENTS OF ERROR
On appeal, Lake Forest and My Favorite Year contend that (1) the lien had not been timely filed according to La.R.S. 9:4822(C); (2) the court erred in finding that "charge backs" were not proven at trial; and (3) the award of attorney's fees was improper.

*181 INTERPRETATION OF LA.R.S. 9:4822
Lake Forest and My Favorite Year contend that the trial court erred by finding that La.R.S. 9:4822(A)[1] governs the filing of all claims and privileges where a notice of contract has been filed. The trial court found essentially that when a notice of contract has been filed, La.R.S. 9:4822(A) mandates that a notice of termination be filed to trigger the running of the period for which a subcontractor has to file his statement of claim and privileges. The terms of the statute clearly establish that La.R.S. 9:4822(A) governs those situations in which a notice of contract has been filed, and La.R.S. 9:4822(C)[2] governs those situations in which no notice of contract has been filed. Therefore, where an owner has neglected to file a notice of termination, the 30-day period provided for in La.R.S. 9:4822(A) never begins to run.
Lake Forest and My Favorite Year contend that the legislature did not intend for such a narrow construction of La.R.S. 9:4822. La.R.S. 9:4822 provides for a 30-60 days pattern for filing. La.R.S. 9:4822(A) provides that the owner can take advantage of a shorter claim period (30 days as opposed to the 60 days provided for in La.R.S. 9:4822(C)) in those instances in which both a notice of contract and a notice of termination have been filed. Where a notice of contract has been filed and the owner has neglected to file a notice of termination, Lake Forest and Favorite Year contend that the statute is structured to provide for a 60-day period for filing claims under La.R.S. 9:4822(C).
The Private Works Act is in derogation of general contract law; therefore, it must be strictly construed. In interpreting the Private Works Act, care must be taken not to overlook the legislative intent and fundamental aim of this act which is to protect materialmen, laborers and subcontractors who engage in construction and repair projects. Keller Building Products of Baton Rouge, Inc. v. Siegen Development, Inc., 312 So.2d 182 (La.App. 1st Cir.), writ denied, 314 So.2d 736 (La.1975).
The statute clearly defines those persons granted a claim or privilege pursuant to this act. It also provides for the respective time periods for the filing statements of such claims and privileges. A 30-day time period is provided for in La.R.S. 9:4822(A) when a notice of contract has been filed, and a 60-day time period is provided for in La.R.S. 9:4822(C) when no notice of contract is filed. Additionally, the official comments to La.R.S. 9:4822 provide: "[i]f a notice of contract is filed, a notice of termination is always required to commence the 30 day time for filing."
The notice of contract/notice of termination procedure provides an owner with a method for cutting off the valid assertion of any potential claims or privileges. To make use of this procedure, the statute requires that an affirmative action be taken by the owner. Where the owner fails or neglects to take such affirmative action, he should be made to bear the consequences of his failure to file a notice of termination, not the claimant. Festival Plaza and My Favorite Year could have limited Bernard's right to file a lien at any time by simply filing a notice of termination of work when the improvements were completed. Since a notice of termination was not filed, the *182 30-day tolling period for filing a statement of claim was never activated. Therefore, Bernard's statement of claims and privileges was filed timely.
The Fourth Circuit addressed the application of the 30-day period set forth in La.R.S. 9:4822(A) in conjunction with the filing of a faulty notice of termination. Where a notice of termination insufficiently describes the immovable, the filing is insufficient to trigger the 30-day period for filing a statement of claims and privileges. Rowley Company, Inc. v. Southbend Contractors, Inc., 517 So.2d 1260 (La.App. 4th Cir.1987), writ not considered, 519 So.2d 139 (La.1988). In Rowley, a notice of termination was filed on October 18, 1983. On February 25, 1985, a materialman filed a sworn statement of it claims. On March 4, 1985, it commenced an action to recover payment for materials that it supplied to the defendants. The defendants filed the peremptory exception raising the objection of prescription since the statement had not been filed within the 30-day period set forth in La.R.S. 9:4822(A). Since the notice of termination insufficiently described the immovable property, the court of appeal found that the filing was ineffective to commence the running of the 30-day period; therefore, the time period for filing the statement of claims and privileges had not expired even though approximately one and a half years had passed since the termination of work.
A subcontractor has 30 days from the filing of a notice of termination to file his statement of claims and privileges regardless of when the notice of termination is filed provided the underlying obligation is still enforceable. In such case, the time period in which the subcontractor has to file his statement of claims and privileges is governed by the Civil Code articles on liberative prescription.
La.R.S. 9:4822(A) clearly places the onus on the owner to file a notice of termination when a notice of contract has been filed. The 30-day period is the applicable time period for filing a statement of claims and privileges when a notice of contract has been filed. This court does not have authority to impose a 60-day maximum period for filing claims as provided for in La. R.S. 9:4822(C) as desired by Lake Forest and My Favorite Year. Such power lies only with the legislature. Because no notice of termination has been filed by My Favorite Year or Lake Forest, we are of the opinion that the 30-day period was never commenced; therefore, Bernard's statement of claims was timely filed.

CHARGE BACKS
The second assignment of error set forth by Lake Forest and My Favorite Year is that the trial court erred in disallowing Lake Forest a credit against the amount owed to Bernard for the "charge backs" it incurred as a result of Bernard's failure to accurately and timely complete the improvements. Lake Forest did not produce any documentary evidence to support the existence and validity of the "charge backs." Furthermore, the testimony given by two officers of Lake Forest on this issue was contradictory. After weighing the evidence and "especially after assessing the credibility of the witnesses," the trial court found that Lake Forest had not proved the alleged "charge backs" by a preponderance of the evidence.
Lake Forest and My Favorite Year's reliance on Culps v. United States Fidelity and Guaranty Company, 206 So.2d 570 (La.App. 1st Cir.1968) and Achord v. Smith, 451 So.2d 1315 (La.App. 1st Cir. 1984) is misplaced. In both of these cases, the evidence of damage was obvious. In the present case, the trial court determined that the evidence presented was insufficient to prove that Lake Forest was entitled to the "charge backs." Therefore, we never get to the issue resolved by the above two cases as to whether Lake Forest accurately specified the amount of each "charge back."
Based on the trial court's determination of credibility of the witnesses and the lack of any documentary evidence to support Lake Forest's claim for "charge backs," we are unable to find that the trial court's finding was manifestly erroneous.

*183 ATTORNEY'S FEES
The third assignment of error pertains to the trial court's award of attorney's fees. It has long been the settled rule that a party may not recover attorney's fees except where authorized by statute or provided for by contract. El Paso Exploration Company v. Olinde, 527 So.2d 511 (La. App. 1st Cir.1988). Lake Forest and My Favorite Year contend that there is no provision for attorney's fees under any of the applicable provisions of the Private Works Act nor does any other statute support the award of attorney's fees in this case.
The trial court found that this was a claim arising out of a specific contract and not one arising under an open contract. Therefore, Bernard was not entitled to use the statute that grants attorney's fees in claims on open accounts. There is no other statutory authority that supports the imposition of attorney's fees in this case. However, the court awarded attorney's fees on the basis that the credit application signed by the president of Lake Forest granted Bernard the right to recover attorney's fees.[3] A suit to recover amounts owed by Lake Forest on its credit account clearly falls within the purview of the provision in the credit application; therefore, the trial correctly awarded attorney fees against Lake Forest.
The same analysis would not entitle Bernard to recover attorney's fees from My Favorite Year. My Favorite Year was not a party to the credit application or the contract between Bernard and Lake Forest. Since recovery of attorney's fees is not authorized by statute or contract, the trial court erred by casting My Favorite Year in judgment for attorney's fees.

DECREE
Therefore, for the above and foregoing reasons the judgment of the trial court awarding attorney's fees in the amount of $2,500.00 against My Favorite Year is reversed. In all other respects the judgment of the trial court is affirmed at defendants-appellants' costs.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] La.R.S. 9:4822(A) provides:

A. If a notice of contract is properly and timely filed in the manner provided by R.S. 9:4811, the persons to whom a claim or privilege is granted by R.S. 9:4802 shall within thirty days after the filing of a notice of termination of the work:
(1) File a statement of their claims or privilege.
(2) Deliver to the owner a copy of the statement of claim or privilege. If the address of the owner is not given in the notice of contract, the claimant is not required to deliver a copy of his statement to the owner. (emphasis added)
[2] La.R.S. 9:4822(C) provides:

C. Those persons granted a claim and privilege by R.S. 9:4802 for work arising out of a general contract, notice of which is not filed, and other persons granted a privilege under R.S. 9:4801 or a claim and privilege under R.S. 9:4802 shall file a statement of their respective claims and privileges within sixty days after:
(1) The filing of a notice of termination of the work; or
(2) The substantial completion or abandonment of the work, if a notice of termination is not filed. (emphasis added)
[3] The specific provision in the credit application provided:

I further agree to pay directly or reimburse you for any attorney fees, court costs and expenses incurred by you in enforcing your rights, up to an amount equal to twenty-five (25%) percent of any amount sought to be collected.