STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0459

JACQUELYN B. JACKSON

VERSUS

THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND MECHANICAL COLLEGE, EMR
SERVICES, LLC, KONE, INC., AND ANY UNIDENTIFIED LSU
STUDENT UNION AGENTS AND/OR EMPLOYEES

CONSOLIDATED WITH

NO. 2019 CA 0460

PAULETTE FENDERSON HEBERT AND FARRAH GAINIE WALLIS

VERSUS

THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND MECHANICAL COLLEGE, EMR
SERVICES, LLC, KONE, INC., AND ANY UNIDENTIFIED LSU
STUDENT UNION AGENTS AND/OR EMPLOYEES

*Judgment Rendered:* **JAN 0 9 2020**

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
The Honorable R. Michael Caldwell, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Dominic N. Varrecchio<br>New Orleans, Louisiana | Counsel for Plaintiffs/Appellants<br>Jacquelyn B. Jackson, Paulette Fenderson<br>Hebert, and Farrah Gainie Willis |
| Christopher J. Aubert<br>David M. Gold<br>Covington, Louisiana | Counsel for Defendant/Appellee<br>EMR Services, LLC |

* * * * * * * *

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

**THERIOT, J.**

In this case involving personal injuries allegedly sustained by elevator passengers when the elevator malfunctioned, the plaintiffs appeal a summary judgment granted in favor of the elevator maintenance provider, dismissing plaintiffs' claims against it with prejudice. For the reasons set forth herein, we affirm.

## FACTS AND PROCEDURAL HISTORY

On June 9, 2014, Jacquelyn B. Jackson, Paulette Fenderson Hebert, and Farrah Gainie Wallis (collectively referred to herein as "Plaintiffs"), were among approximately eight or nine passengers on an elevator in the LSU Student Union Building. According to the Plaintiffs' allegations, the elevator "fell" or "dropped" several feet very swiftly and then stopped abruptly, causing injuries to the Plaintiffs. Plaintiffs reported the incident to the LSU Student Union employees on duty, and accident reports were prepared. Plaintiffs alleged that immediately after the incident, they heard the LSU employees who assisted passengers from the elevator state that there had been similar problems or malfunctions with the same elevator the day before. Further, Jackson alleged that the LSU employees mentioned that they would need to report the elevator problems again.

Plaintiffs sued the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU"), as the owner/operator of the LSU Student Union Building; EMR Services, L.L.C. ("EMR"), as an elevator installer or elevator maintenance provider for the LSU Student Union Building; KONE, Inc. ("KONE"), as an elevator manufacturer, installer, or maintenance provider for the LSU Student Union Building; and certain unidentified LSU employees.[1]

---

[1] Plaintiffs initially filed separate suits, but they were consolidated by order of the trial court on January 26, 2016. The "Unidentified LSU Student Union agents and/or employee(s)" were dismissed from the suit on January 26, 2016, and KONE was dismissed from the suit on September 26, 2016.

2

EMR filed a motion for summary judgment on the Plaintiffs' claims on May 22, 2017.[2] In support of its motion, EMR filed the affidavit of its elevator mechanic, Robert Pearce, and excerpts from Jackson and Hebert's depositions. Pearce stated that as an EMR elevator mechanic, he was responsible for repairing and maintaining the LSU Student Union elevator at issue and that the elevator was maintained in accordance with industry standards at and around the time of the incident involving Plaintiffs. Pierce attested that EMR's records showed that LSU called EMR to report the incident involving Plaintiffs, but that the records contained no reports of the LSU Student Union elevator "falling" at any time before or after the incident involving Plaintiffs. Pearce inspected the elevator following the call from LSU and found that the elevator had suffered a power failure and needed adjustments to the first floor interlock and to a roller guide. Pearce explained that the power delivery failure that occurred would account for the elevator stopping unexpectedly (described as a "fall" or "drop" by Plaintiffs); however, according to Pearce's affidavit, power delivery to the elevator was not provided by EMR and was beyond the scope of EMR's maintenance services. Pearce further explained that although he did have to make some adjustments to the elevator following the incident involving Plaintiffs, neither adjustment was the result of a problem which could have caused the "fall" or "drop" described by Plaintiffs. Rather, he believed that the adjustments may have been needed as a result of the incident. In her deposition, Jackson testified that she had no idea what caused the elevator to drop and then stop abruptly, nor did she know who maintained the elevator or what was done to maintain the elevator. However, she testified that an unidentified "LSU maintenance guy" who pried the doors open and helped them out of the elevator said, "That happened yesterday. I thought we

---

[2] LSU filed its own motion for summary judgment, which is the subject of a separate appeal before this court. See *Jackson v. The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, et al.,* 2019-0457 c/w 2019-0458 (La.App. 1 Cir. __/__/__).

3

fixed that." Hebert likewise testified that she did not know what EMR did or did not do to maintain the elevator.

Plaintiffs filed a single opposition, addressing both EMR and LSU's motions for summary judgment. With regard to EMR's liability, Plaintiffs simply argued that there remained a genuine issue of material fact because Plaintiffs could not determine whether EMR was negligent in its performance or nonperformance of maintenance services on the LSU Student Union elevator at issue "until LSU provides the names and contact information of those witnesses working at the LSU Student Union immediately before, after[,] and during the alleged problems with the subject elevator, as well as the records of when and how EMR was placed on notice of the malfunctioning subject elevator." In support of its opposition, Plaintiffs filed LSU's responses to discovery, Jackson's affidavit, an unauthenticated copy of Jackson's accident report, Hebert's affidavit, excerpts from Jackson's deposition, and excerpts from Hebert's deposition.[3] LSU's answers to interrogatories filed by Plaintiffs in opposition to summary judgment simply state that EMR provided routine maintenance of the elevator at issue pursuant to its service contract with LSU, that LSU's former Facilities Manager, John Bryan Lacy, notified EMR following the incident involving Plaintiffs and requested maintenance, and that EMR came out to inspect the elevator shortly thereafter. Neither the affidavits nor the deposition excerpts filed by Plaintiffs in opposition to the motions for summary judgment contain any mention of EMR.

---

[3] The only documents that may be filed in support of or in opposition to a motion for summary judgment are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). Documents not included in this exclusive list, such as photographs, pictures, video images, or contracts, may not be filed unless they are properly authenticated by an affidavit or deposition to which they are attached. Furthermore, although answers to interrogatories are included in the exclusive list, they may not be filed in support of or in opposition to a motion for summary judgment unless they are answered under oath, as required by La. C.C.P. art. 1458. See La. C.C.P. art. 966, 2015 Revision Comment (c). Jackson's accident report was not properly authenticated by an affidavit or deposition to which it was attached, and LSU's answers to interrogatories were neither answered under oath nor authenticated by an affidavit or deposition to which they were attached. Nevertheless, EMR did not object to Plaintiffs' filing of these documents, as required by La. C.C.P. art. 966(D)(2); therefore, we will consider these documents in conjunction with the motion for summary judgment. See La. C.C.P. art. 966(D)(2) ("The court . . . shall consider any documents to which no objection is made.") and *McCray v. S. Aggregates, LLC*, 2018-1545, p. 4 (La.App. 1 Cir. 8/29/19), 282 So.3d 262, 265 n.3.

The trial court took the matter under advisement after a hearing on the motions for summary judgment in order to conduct an in camera inspection of LSU's privilege logs and certain evidence. Following the trial court's in camera inspection, LSU was ordered to supplement certain discovery responses and Plaintiffs were given an additional sixty-day period to conduct additional discovery. The motions for summary judgment were reset for hearing on May 21, 2018.

On May 8, 2018, Plaintiffs filed a supplemental memorandum in opposition to the motions for summary judgment and attached supplemental affidavits of Jackson and Hebert, as well as the affidavit of another elevator passenger, Diane Whipple, and LSU's supplemental discovery responses.[4] Jackson and Hebert's supplemental affidavits still did not contain any mention of EMR; however, both noted (in response to Pearce's statement that a power delivery failure had occurred) that the elevator lights never blinked or went out. Whipple's affidavit was essentially the same as Plaintiffs' affidavits and did not mention EMR except to state that the lights on the elevator did not blink or go out. LSU's discovery responses filed with Plaintiffs' supplemental opposition state that LSU did not contact EMR regarding any problems or necessary repairs for the subject elevator before or after the incident, other than the call to report the incident involving Plaintiffs and request maintenance. EMR's repair order for its maintenance call following the incident involving Plaintiffs was attached to LSU's discovery responses. This repair order described the work performed as:

> Customer said that car dropped below floor. Checked controller and found an ac power supply fault, power failed. <u>170</u>. A door closing fault, door failed to close too many times. <u>44</u>. A load weighing fault, it saw the wrong voltage in the start. <u>107</u>. Reset unit and trouble shot, found 1st floor hatch door interlock was out of adjustment. Readjusted interlock and pickup rollers, replaced one bad roller and ran unit. Returned unit back to service after running it.

---

[4] LSU's supplemental discovery responses were neither answered under oath nor authenticated by an affidavit or deposition to which they were attached. However, as explained in note 3, supra, since EMR did not object, we will consider these documents in conjunction with the motion for summary judgment.

At the second hearing on the motions for summary judgment, Plaintiffs' attorney informed the trial court that although LSU had recently produced a list of approximately twenty people who were working at the LSU Student Union on the date of the incident involving Plaintiffs, LSU had failed to identify the employee who Plaintiffs allege told them about prior trouble with the elevator or to produce an affidavit from that employee denying that he made those statements. Following the hearing, the trial court granted both EMR's and LSU's motions for summary judgment and signed separate judgments dismissing Plaintiffs' claims against each with prejudice. Plaintiffs appealed both trial court judgments; however, only the judgment dismissing Plaintiffs' claims against EMR is at issue herein.

Plaintiffs' single appellate brief, filed in both appeals, states that the dismissal of its claims against EMR "is not seriously contested and nominally appealed here in protection of the [Plaintiffs'] rights in the event liability is imputed and proven upon [EMR] in the future." Plaintiffs again argue on appeal that LSU's "refusal" to identify the specific LSU employee who allegedly told plaintiffs that there had been similar problems with the elevator the day before made it impossible for Plaintiffs to determine whether EMR was notified of a problem prior to the incident involving Plaintiffs.

## DISCUSSION

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).

The burden of proof on a motion for summary judgment rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue

before the court on the motion for summary judgment, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point to the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). Once a motion for summary judgment has been made and supported, the adverse party may not rest on the mere allegations or denials in their pleadings, but their responses must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be rendered against them. See La. C.C.P. art. 967(B).

In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria governing the trial court's determination of whether summary judgment is appropriate. *Salvador v. Main St. Family Pharmacy, L.L.C.*, 2017-1757, p. 4 (La.App. 1 Cir. 6/4/18), 251 So.3d 1107, 1111-12. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Juge v. Springfield Wellness, L.L.C.*, 2018-0736, p. 4 (La.App. 1 Cir. 2/28/19), 274 So.3d 1, 5, *writ denied*, 2019-0513 (La. 5/28/19), 273 So.3d 309.

In this case, Plaintiffs assert general negligence claims against EMR. The duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability under La. C.C. art. 2315. *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095, p. 7 (La. 3/10/06), 923 So.2d 627, 632–33. This approach provides an analytical framework for evaluation of liability, in which a

7

plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element). *Mathieu v. Imperial Toy Corp.*, 1994-0952, pp. 4-5 (La. 11/30/94), 646 So.2d 318, 322. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. *Lemann*, 2005-1095 at p. 7, 923 So.2d at 633.

In support of its motion for summary judgment, EMR filed evidence showing that it maintained the elevator in accordance with industry standards, it did not receive notice of any problems prior to the incident involving Plaintiffs, and the cause of the incident which allegedly caused Plaintiffs' injuries was not within the scope of EMR's maintenance services. In opposition, Plaintiffs did not offer evidence to prove that EMR was negligent in maintaining the elevator or that EMR's negligence caused Plaintiffs' injuries. Rather, Plaintiffs simply argued that additional discovery was needed in order to determine whether EMR was liable for their injuries.

La. C.C.P. art. 967(C) provides that if it appears from the affidavits of a party opposing the motion for summary judgment that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment, order a continuance or permit affidavits to be obtained or depositions to be taken or discovery to be had, or enter any other order that is just. However, there is no absolute right to delay action on a motion for summary judgment until discovery is complete. Rather, all that is required is that the parties have a fair opportunity to carry out discovery and to present their claim. It is within

8

the trial court's discretion to render summary judgment or require further discovery, and a trial court's decision in this regard should only be reversed upon a showing of an abuse of discretion. *McCastle-Getwood v. Professional Cleaning Control*, 2014-0993, pp. 7-8 (La.App. 1 Cir. 1/29/15), 170 So.3d 218, 222-23.

Although the trial court initially granted additional time for Plaintiffs to conduct additional discovery after the first summary judgment hearing, Plaintiffs did not attempt to contact the LSU employees identified by LSU in discovery during the additional time granted and instead simply argued that the trial court should maintain their claims against EMR in case later discovery revealed that they would be able to prove a claim against EMR.[5] The Plaintiffs were given a fair opportunity to carry out discovery and to present their claims; therefore, the trial court did not abuse its discretion in rendering summary judgment rather than allowing Plaintiffs additional time to conduct discovery under these circumstances.

We find that EMR properly supported its motion for summary judgment by pointing out an absence of factual support for one or more elements of Plaintiffs' negligence claims. Accordingly, the burden shifted to the Plaintiffs to produce factual support sufficient to establish a genuine issue of material fact regarding EMR's liability. See La. C.C.P. art. 966(D)(1). After reviewing the evidence de novo, we find that the Plaintiffs have failed to present factual support sufficient to establish that they will be able to satisfy their evidentiary burden of proof at trial. Accordingly, there is no genuine issue of material fact, and EMR is entitled to summary judgment dismissing Plaintiffs' claims against it. See La. C.C.P. art. 966(A)(3).

---

[5] At the rescheduled hearing on the summary judgment motions, Plaintiffs' counsel told the trial court:

> I don't, at this point, believe that there is a liability on the part of EMR as we stand today and based on my theory of the case, but I ask that the court not dismiss them with prejudice in the event that we are going to survive the summary judgment and LSU were to come up with some type of witness or some type of statement that diverts liability to them rather than LSU.

## CONCLUSION

For the reasons set forth herein, we affirm the trial court judgment granting EMR Services, L.L.C.'s motion for summary judgment and dismissing Plaintiffs' claims against EMR Services, L.L.C. with prejudice. Costs of this appeal are assessed to Plaintiffs-Appellants, Jacquelyn B. Jackson, Paulette Fenderson Hebert, and Farrah Gainie Wallis.

**AFFIRMED.**